**In re the Marriage of Tracy Ann DABROWSKI, Petitioner, Respondent,**

v.

**Charles Gerald DABROWSKI, Appellant.**

No. CO–91–740.

Court of Appeals of Minnesota.

Nov. 26, 1991.

Nancie R. Theissen, Sharon L. Hall, Barna, Guzy & Steffen, Ltd., Coon Rapids, for respondent.

Jeffrey P. Hicken, Robert A. Howard, Jensen, Hicken, Gedde & Scott, P.A., Anoka, for appellant.

Considered and decided by KLAPHAKE, P.J., and RANDALL, and CRIPPEN, JJ.

## OPINION

KLAPHAKE, Judge.

A former spouse moved to modify a child custody order to establish sole legal and physical custody in her, accelerate her lien on the parties' former homestead property, and to obtain an award of attorney fees. The trial court granted the custody motion and awarded her $3,000 in legal fees, but denied her motion to accelerate the lien. Both parties appeal. We affirm.

## FACTS

The marriage of Tracy Dabrowski (respondent) and Charles Dabrowski (appellant) was dissolved on April 26, 1989. The decree provided for joint legal and physical custody of the two minor sons, (presently) ages 9 and 6. The decree designated appellant's home as the primary residence of the children, but awarded respondent extended visitation rights. Pursuant to the established visitation, the children were to spend approximately 64 percent of their time with appellant and approximately 36 percent of their time with respondent.

From April 1989 until June 1990, the children's principal residence was with appellant. In response to the motion for change of custody, the trial court appointed a guardian ad litem for the children, appointed a psychologist to conduct a custody evaluation, and granted respondent custody pending the outcome of the hearing. After five continuances at appellant's request, a five-day evidentiary hearing was held in early November 1990.

The evidence revealed that the children's physical and emotional well-being had substantially deteriorated during the period in which they resided with appellant. The nine-year-old suffered from encopresis (involuntary soiling) which worsened to the point of becoming a daily occurrence. The six-year-old also began to wet and soil himself. Furthermore, appellant was inattentive to the boys' hygiene, grooming, and medical care. The nine-year-old child often arrived at school dirty, wearing clothes that were too small, with his shoes on the wrong feet. After picking him up for visitation on one occasion, respondent immediately brought him to the family physician for treatment of a skin condition caused by inadequate washing. The treating physician notified Anoka County Child Protection of possible neglect.

The nine-year-old's teachers testified that he had numerous problems in school during the period in which he resided with appellant. He was unfocused and disruptive in class, and aggressive toward, and shunned by, his fellow classmates. He chewed on his clothes until they were wet. He failed to complete most of his schoolwork. Appellant admitted that he did not assist the child with his schoolwork, despite the child's teacher's requests. At the end of the 1990 school year, the school recommended that he be retained in second grade.

The nine-year-old also suffered physical injuries while in appellant's custody. From January to June 1990, he suffered lacerations and burns on his body, causing his teacher to notify Anoka County Child Protection. Child protection workers substantiated child abuse, but failed to identify the perpetrator. While in appellant's custody, he likewise sustained a broken hand and other abrasions and injuries, including a bloody nose which appellant admitted causing when he attempted to break up a fight between his sons.

Appellant also manipulated the visitation schedule to deprive respondent of her visitation time and to verbally threaten, abuse and harass her, often in front of the children. He also intercepted her phone messages on her answering machine and "bugged" her home. And while the children resided with appellant, the children's longstanding day-care provider, therapist, and the Fridley Medical Center all terminated their services to the children, citing conflicts with appellant.

The children's emotional well-being improved substantially when respondent received temporary full custody in July 1990. Respondent enrolled the nine-year-old in a remedial learning center to help him improve his academic skills and assisted him with his schoolwork, so that by fall of 1990 he was able to progress to third grade. His school performance and behavior improved. Both children's encopresis and "wetting" substantially ceased, with occasional accidents occurring coincident with hostile visitation exchanges. The court-appointed custody evaluator, the guardian ad litem and the children's therapist all recommended that the children be placed with respondent, stating that the children could experience physical and emotional harm if placed with appellant.

On March 6, 1991, the trial judge issued lengthy findings and conclusions of law, awarded respondent sole physical and legal custody of the boys and ordered appellant to pay child support and $3,000 in attorney fees. The trial court also denied respondent's motion to accelerate her lien on the parties' former homestead property.

In granting respondent sole physical and legal custody, the trial judge applied the "best interests of the child" standard of Minn.Stat. § 518.17 (1990), but noted that even if the more stringent "impairment" standard of Minn.Stat. § 518.18 (1990) were applied, respondent had met her burden of proving physical and emotional impairment.

Appellant contends that the trial court erred in applying the "best interest" standard of Minn.Stat. § 518.17 rather than the "impairment" standard of Minn.Stat. § 518.18 to modify custody; in considering the best interests of the minor children, and in awarding respondent $3,000 in attorney fees. Respondent filed a notice of review of the trial court's denial of her request to accelerate her lien on the parties' former homestead property, and requested an award of her attorney fees on appeal.

## ISSUES

1. Is Minn.Stat. § 518.18 (1990) the appropriate standard to be used in proceedings to modify joint custody?

2. Did the trial court sufficiently consider the "impairment" factors of Minn.Stat. § 518.18 in modifying custody?

3. Did the trial court err in refusing to accelerate respondent's lien on the parties' former homestead property?

4. Did the trial court err in awarding respondent $3,000 in costs and attorney fees?

5. Should respondent be awarded attorney fees on appeal?

1. The trial judge applied the best interest standard of Minn.Stat. § 518.17 (1990) but found in addition:

Even if the impairment test [rather than best interest test] were the standard, the court

## ANALYSIS

### I.

Appellant argues that the trial court erred as a matter of law in basing its findings primarily on the "best interest" factors of Minn.Stat. § 518.17 (1990), rather than the "impairment" factors of Minn. Stat. § 518.18 (1990), and that as a result, its judgment awarding custody to respondent must be reversed and remanded for a further evidentiary hearing.[1]

Appellate review of custody determinations is limited to whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law. *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn.1985). The trial court's findings must be sustained unless clearly erroneous. *Id.* The appellate court need not, however, defer to the trial court in reviewing questions of law. *Van De Loo v. Van De Loo*, 346 N.W.2d 173, 175 (Minn.App.1984). Determining which statutory standard applies presents a question of law.

At the time of the custody hearing, custody modification was governed by *Klecker v. Klecker*, 454 N.W.2d 264 (Minn.App. 1990). *Klecker* held that the Minn.Stat. § 518.18 did not apply to situations involving actual joint physical custody and that instead the "best interest" standard of Minn.Stat. § 518.17 governed. *Id.* at 267. In 1991 the legislature, as a "clarifying procedure for modification of certain custody orders" amended Minn.Stat. § 518.18 to provide:

(e) In deciding whether to modify a prior joint custody order, the court shall apply the standards set forth in paragraph (d) unless:

(1) the parties agree in writing to the application of a different standard, or (2) the party seeking the modification is ask-

finds that petitioner has also met the burden in proving both physical and mental impairment to the minor children while in [appellant's] custody.

ing the court for permission to move the residence of the child to another state. 1991 Minn. Laws ch. 266 § 1.

The standard referred to in paragraph (d) in the above language is the "endangerment" or "impairment" standard, which provides as follows:

(d) * * * the court shall not modify a prior custody order unless it finds, upon the basis of facts that have arisen since the prior order or that were unknown to the court at the time of the prior order, that a change has occurred in the circumstances of the child or the parties and that the modification is necessary to serve the best interest of the child. In applying these standards the court shall retain the custody arrangement established by the prior order unless:

> \*   \*   \*   \*   \*   \*

(iii) the child's present environment endangers the child's physical or emotional health or impairs the child's emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

Minn.Stat. § 518.18(d)(iii) (1990).

■■■ "Generally, a law is not construed to be retroactive unless that is clearly the intent of the legislature." *Omdahl v. Hadler*, 459 N.W.2d 355, 359 (Minn.App.1990) (citing Minn.Stat. § 645.21 (1988)). However, where the legislature clarifies a statute, the statute may be read retroactively. *Omdahl*, 459 N.W.2d at 359. In addition, where the legislature's prompt reaction to a court's statutory construction shows disagreement with the court's construction rather than a change in legislative policy, "it is not a question of retroactivity, but more merely akin to a clarification." *Hoben v. City of Minneapolis*, 324 N.W.2d 161, 163 (Minn.1982).

■■■ In this case, the legislature has referred to the amendment to Minn.Stat. § 518.18 as a clarification. *See* 1991 Minn. Laws ch. 266 § 1. In addition, it appears that this clarification was intended to address this court's decision in *Klecker*. As a result, the appropriate standard to be used

in proceedings to modify joint custody is the endangerment or impairment standard of Minn.Stat. § 518.18.

### II.

■■■ Appellant contends that the trial court's findings insufficiently addressed the impairment factors of Minn.Stat. § 518.18. We disagree. Although the trial court's findings are structured to reflect a best interest analysis, they also expressly reference the impairment standard of Minn.Stat. § 518.18, and conclude that the facts so found also satisfied that more stringent standard. In addition, the trial court specifically found that the children's physical health and emotional well-being deteriorated while they resided with appellant, as evidenced by increased soiling and wetting, aggressive behavior, poor school performance, and repeated incidents of physical injury. We therefore conclude that the trial court's findings of fact established endangerment and impairment sufficient under Minn.Stat. § 518.18(d)(iii) to support its decision to modify joint custody.

Appellant also challenges the trial court's findings on the children's expressed preference to reside with respondent. Custodial preference is a factor to be considered in awarding custody under a best interest analysis. *See* Minn.Stat. § 518.17, subd. 1(2) (1990). Because we conclude that Minn.Stat. § 518.18 is the appropriate standard to be used in custody modification proceedings, it is unnecessary to address appellant's arguments.

### III.

■■■ The judgment and decree awarded respondent a lien on the parties' homestead in the amount of $15,680 payable on or before May 30, 1994. No provision was made for prepayment of the lien. At the time of the judgment and decree, appellant and the two minor sons resided in the household. After the decree, appellant purchased and moved to another home and rented the former homestead to third parties. Respondent thereafter obtained sole physical custody of the children, who moved into her home.

Respondent moved the trial court for an order clarifying the judgment and decree and directing that her lien be immediately due and payable. Respondent challenges the trial court's denial of her motion and its finding that the lien was a non-modifiable property award and not in the nature of child support.

Our review of trial court findings in a dissolution case is limited to determining whether the trial court "abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Pikula,* 374 N.W.2d at 710. The trial court's findings must be sustained unless clearly erroneous. *Id.*

In general, property divisions in dissolution cases are final and not subject to modification. *See* Minn.Stat. § 518.64, subd. 2(d) (1990). However, portions of property provisions which are in the nature of maintenance or support are modifiable. *Martin v. Martin,* 364 N.W.2d 475, 479 (Minn.App.1985); *see also Kerr v. Kerr,* 309 Minn. 124, 128, 243 N.W.2d 313, 315 (1976); *Thomas v. Thomas,* 356 N.W.2d 76, 79 (Minn.App.1984).

Respondent contends that *Kerr* and *Thomas* require the lien to be considered child support and thus modifiable. We disagree. The liens at issue in both *Kerr* and *Thomas* served as security for arrearages in child support and contained, in addition, language providing for immediate foreclosure upon the occurrence of a number of conditions. Unlike the liens at issue in *Kerr* and *Thomas,* respondent's lien contains neither conditional language nor language connecting it to child support. As such, we do not believe the trial court abused its discretion in characterizing the lien as a non-modifiable property award.

## IV.

Appellant contends that the trial court erred in awarding respondent $3,000 in attorney fees because it failed to find respondent's need for such fees pursuant to Minn.Stat. § 518.14 (1990). We disagree.

Fee awards under Minn.Stat. § 518.14 may be based on the impact a party's behavior has had on the costs of the litigation regardless of the relative financial resources of the parties. *Holder v. Holder,* 403 N.W.2d 269, 271 (Minn.App. 1987). Second, an award of attorney fees is discretionary and will not be disturbed absent a clear abuse of discretion. *Smolecki v. Smolecki,* 386 N.W.2d 846, 849 (Minn.App.1986), *pet. for rev. denied* (Minn. July 16, 1986). Here the trial court found, and the record reflects, that appellant unreasonably contributed to the length and expense of the proceeding by requesting five separate continuances and engaging in improper discovery tactics. As a result, the trial court's award of $3,000 was not a clear abuse of discretion.

## V.

Respondent requests an award of attorney fees incurred in this appeal, contending that appellant's actions in appealing were undertaken in bad faith and solely for purposes of harassment. Attorney fees may be awarded in dissolution cases where the appeal was frivolous or in bad faith. *See* Minn.Stat. § 518.14; *Roehrdanz v. Roehrdanz,* 438 N.W.2d 687, 691 (Minn.App.1989) (respondent awarded $4,000 in attorney's fees on appeal where appellant's custody challenge was so specious and unfounded as to constitute harassment), *pet. for rev. denied* (Minn. June 21, 1989). We decline to make such an award in this case because issues raised in this appeal were not frivolous. In addition, the relative resources of the parties indicate that a further award of attorney fees is not warranted. Respondent has an income in excess of $40,000 and appellant is currently without a steady source of income, as he is attempting to establish a business. As a result, we deny respondent's request for additional attorney fees.

## DECISION

Affirmed.